## No. 5696.

### SUCCESSION OF M. M. DOWLER.

The creditor of a succession can not demand that the auctioneer, who has sold property of the succession, shall pay over the proceeds of the property. Only the one charged with the administration of the succession, is empowered to make such demand.

The auctioneer is entitled to reserve out of the proceeds of property sold by him, the amount of his commissions, and the expenses of the sale.

APPEAL from the Second District Court, parish of Orleans. *Tissot, J.*

*McGloin & Nixon,* for W. I. Hodgson, appellant.

*Braughn, Buck & Dinkelspiel,* for appellee.

*James Lingan,* for the succession.

The opinion of the court was delivered by

MARR, J. Certain property of the succession of M. M. Dowler had been sold in the course of administration by Hodgson, auctioneer, by order of the Second District Court.

On the ninth of November, 1874, Mauske, a judgment creditor, took a rule on Mrs. Ann Dowler, tutrix, on which judgment was rendered on the twenty-first of December ordering the sale to be completed and the cash portion of the price to be deposited by the tutrix in the hands of the sheriff, subject to the further orders of the court.

On the fourth of January, the sheriff addressed a note to Hodgson saying that he had been requested by the attorneys of the purchaser to call on him, Hodgson, for the sum of seven hundred and twenty dollars held by him in the succession of Dowler, and ordered by the Second District Court to be deposited with the civil sheriff.

On the eighteenth of January the attorneys of Mauske, suggesting that

Hodgson had been served with an order requiring him to pay into the hands of the sheriff the proceeds of the sale, took a rule on him to show cause why he should not pay over the money at once, or be punished for contempt.

Hodgson excepted that Mauske had no right to stand in judgment in this matter, and that the only person who could take such proceedings against him was the administratrix. Reserving the benefit of the exception, he stated that he had received the seven hundred and twenty dollars as cash payment on the property sold; that he had advertised and offered the property four times, under as many different orders of the court; that the sale was completed, and the title passed and accepted on the twenty-ninth of December, 1874; that he had incurred expenses and charges amounting to $342 80, leaving balance in his hands $347 20, after deducting his commissions, thirty dollars, and thirty dollars paid the notary for canceling mortgages, etc., by consent of all parties.

He denied that he had ever been served with any order of the court requiring him to pay over any funds, as set forth in the rule. He claimed the right to retain the amount of his commissions, expenses, and charges, and stated that he had ever been ready and willing to pay over the balance in his hands under order of the court, and that on the nineteenth of January he had tendered the amount to the sheriff, who had refused to receive it, under instructions from the attorney of the succession.

The rule was made absolute, and Hodgson was ordered, within five days, to deposit the proceeds of the sale in the hands of the civil sheriff, and from this judgment he appealed.

On the trial Hodgson testified that the total amount received in cash was seven hundred and fifty dollars; that he had never been informed that an order had been issued requiring him to make a deposit of the money with the sheriff until since the rule had been served on him, and that he had made a tender of the balance in his hands to the sheriff, after receiving a note from him to that effect.

A bill of exceptions informs us that Hodgson offered to prove the amount of expenses incurred in selling the property, which testimony was objected to by counsel for plaintiff in rule and refused by the court, on the ground that he could not prove any offset against the succession of Dowler when called upon to account for money in hand belonging to the succession, and that such evidence, if admitted, would be no defense to his rule.

We think the court erred in maintaining this rule. Mauske had no right to control the funds in the hands of the auctioneer. It was the business of the tutrix, or the person administering the succession, to demand the money of Hodgson, and we are at a loss to know what the

sheriff had to do with this business; why the money of the succession, to which the tutrix was legally entitled, and for which she is legally account-able, should have been ordered into the custody of the sheriff.

If the rule could have been maintained, the court should have received the testimony offered to prove the amount of Hodgson's claim. . It was not in the nature of an offset; it was not a debt due by the deceased; it was simply the unquestionable right of the auctioneer to retain out of the gross proceeds in his hands the expenses incurred and his charges and commissions for selling the property. The law fixes the commis-sions, but the other charges are dependent on the proof, and no law makes it the duty of the auctioneer to pay the entire proceeds into the hands of the person legally entitled to it, much less into the hands of the sheriff, a stranger to the proceeding, and to claim his expenses and charges as a creditor. If the court had heard the testimony, and had fixed the amount justly chargeable against the proceeds, and had ordered Hodgson to pay the balance to the tutrix, this litigation would probably have ended there, and we would be glad, if it were in our power, to make this disposition of the case.

The rule taken by Mauske was officious. The sale was completed only on the twenty-ninth of December. *Non constat* that the tutrix and the auctioneer would not have settled this matter amicably and properly, and that the net proceeds of sale would not have been paid over to the tutrix by the auctioneer without unreasonable delay. Mauske had a right to call on the tutrix to account and to pay the debt due him, but he had no right to interfere with the administration by provoking an order to have the money, which should have gone into the hands of the tutrix, placed in the hands of the sheriff. It is the business of the person charged with the administration to demand debts, money, and property belonging to the succession, and to administer and dispose of the effects under the order of the probate court, but the creditors of the succession have noth-ing to do with the property, nor with the debts, nor the debtors of the succession.

In the hope of promoting a correct and speedy settlement, which ought to be a very simple matter, we suggest that the proper course is for the tutrix, or the person administering the succession, to take a rule on Hodgson to show cause why he should not pay the money in his hands, proceeds of sale of the property of the succession. In answer to this rule he would set out in detail whatever deductions he claims for costs, charges, and commissions. The court would hear the proof, fix the amount, and order Hodgson to pay over the balance.

As the case comes before us, we are compelled to reverse the judgment appealed from, and we do this with less reluctance because the costs will

fall upon the person whose unwarranted interference has caused this delay in the settlement of the succession.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and annulled; that the rule herein taken by Otto Mauske, on the eighteenth of January, 1875, upon which the judgment appealed from was rendered, be dismissed, and that Otto Mauske pay the costs in the court below and of this appeal.